HEARD APRIL TERM, 1874.

## MULLER *vs.* WADLINGTON.

B as principal, and W as surety, gave to F & M seven money bonds, and B, at the same time, gave to the obligees his mortgage of real estate to secure the payment of the bonds. A became the assignee and holder of one of the seven bonds, the other six and the mortgage remaining in the possession of F, and after the assignment F & M, without the knowledge or consent of A, by writing, endorsed on the mortgage a release of its "lien and legal effect:" *Held*, That the release did not discharge W from his liability on the bond held by A.

Where a mortgage is given to secure the payment of several bonds, the assignment of one bond only does not carry the legal title to the mortgage, but only an equity.

A surety in a bond, as well as an assignee thereof, is entitled to the protection of a mortgage given to secure the payment of the debt and to enforce the same.

BEFORE CARPENTER, J., AT COLUMBIA, MAY TERM, 1873.

Action by G. Muller against T. B. Wadlington, on a bond for $2,102, dated the 2d January, 1854, and payable, with interest from date, on the 1st January, 1855.

The case was this : On the 2d January, 1854, S. Fair and J. F. Marshall sold and conveyed to John Bauskett a tract of land, said to contain 1,839 acres, for $28,007, and to secure the payment of the purchase money, Bauskett, on the same day, gave to Fair and Marshall seven bonds, executed by himself, and Wadlington as his surety, and also a mortgage of the tract of land. The mortgage was duly recorded. By an arrangement between Fair and Marshall, Fair became the owner and holder of the bonds and mortgage, and before the 1st January, 1855, he assigned to the plaintiff, for valuable consideration, one of the seven bonds—the bond in suit. The other six bonds and the mortgage remained in the possession of Fair.

Bauskett, from time to time, made payments on the bond held by the plaintiff, but leaving a balance due thereon, amounting, on the 1st January, 1866, to $2,000.

After the execution of the bonds and mortgage Bauskett sold the mortgaged tract of land to one L. J. Hancock, who afterwards negotiated with one James M. Rhett to sell it to him. Pending this negotiation Fair delivered the mortgage to Bauskett, having first made upon it the following endorsement :

" COLUMBIA, S. C.

"The lien and legal effect of the within mortgage is hereby released and dicharged forever, this April 14th, 1863.

"SAMUEL FAIR,

" For FAIR & MARSHALL.

" In presence of Jos. A. BLACK."

This endorsement was recorded in the office of the Register of Mesne Conveyance for Richland County. It was made without the knowledge or consent of the plaintiff.

Bauskett is dead and his estate insolvent.

The defendant contended that the release discharged him from all liability on the bond.

His Honor, to whom the issues were submitted, to be decided

without a jury, held that the defendant was not discharged, and judgment was entered for the plaintiff.

The defendant appealed.

*Garlington, Suber & Caldwell* and *Carroll,* for appellant:

The assignee of a bond or other unnegotiable chose in action takes, subject to all the equities existing between the obligor and the obligee at the time or before notice of the assignment.—1 Bac. Ab., 384; *Smith* vs. *Tunno,* 2 McC. Ch., 443; *Maybin* vs. *Kirby,* 4 Rich. Eq., 105; Code of Procedure, §§ 134, 135.

The surety on a note or bond is entitled to the benefit of all the securities given by the principal debtor to the creditor, whether the security be given at the request of the surety or not, and whether given at the time of the execution of the bond or afterwards; and if the security be lost by the fault of the creditor the surety is released.—Story Eq. Jur., § 326; *Law* vs. *East India Co.,* 4 Ves., 833; Lead Cas. in Eq., Vol. 2, Pt. 2, ps. (top) 374, 376, 377; *R. R. Co.* vs. *Claghorne,* Sp. Eq., 545; *Van Lew* vs. *Parr,* 2 Rich. Eq., 321; *Wulff* vs. *Jay,* 3 Moak's Eng. Rep., 298.

The assignment of a bond carries with it, by operation of law, the assignment of the mortgage given to secure it; therefore the assignee of a bond secured by a mortgage, having all the rights of the original obligee of the bond, is subject to all the duties and penalties attaching to such original obligee in connection with such mortgage.—Story Eq. Jur., § 1047; Lead. Cas. in Eq., Vol. 2, Pt. 2, p. (top,) 236; *Wright* vs. *Eaves,* 10 Rich. Eq., 582.

In this case the recording of the mortgage within the period required by law perfected the right of the surety, and was notice, from the first, to the assignee, of the security given to secure the bond, whether he had actual notice or not.—*Thayer* vs. *Davidson,* Bail. Eq., 412; *Godbold* vs. *Lambert,* 8 Rich. Eq., 155.

The assignee, (Muller,) by leaving the mortgage (in which, by the assignment of the bond, he had an interest *pro tanto,*) in the hands of the original mortgagee, (Fair,) constituted Fair his trustee; and, therefore, innocent purchasers of the mortgaged property on the faith of a release of the mortgage by Fair must be protected against the claims of any one in connection with the mortgage, *i. e.* against the claims both of the assignee and of the surety on the bond; for Fair remained the legal owner of the mortgage, and his release was sufficient to protect purchasers without notice. This

position is sustained by the principles announced in *Williams* vs. *Sorrell*, 4 Ves., 389, and in *Holbrook* vs. *Colburn*, 6 Rich. Eq., 289, in which latter case it is said that where the assignee of a bond gives no notice of the assignment to the obligor, but allows the bond to remain in the hands of the obligee, and to be sued by him in his own name, he is subject to all the equities existing against the obligee, and is concluded by a judgment against the obligee.— *Vanderhemp* vs. *Shelton*, 11 Paige Ch. Rep., 28.

If the last position is not correct it behooves the respondent to show it, for, *prima facie*, Wadlington has lost his security.

Assuming that the security of the mortgage is lost, the respondent must take one or the other horn of the dilemma—either he bought a bond of which the law did not permit him to make himself the complete master, or else he was guilty of laches in not asserting his rights in the mortgage in such a way as would have prevented its release.

The surety's equity is superior to that of the assignee, because: 1st. His rights attached before those of the assignee. 2d. The assignee bought necessarily subject to his rights. 3d. The assignee was a volunteer, a speculator, one taking at every risk.

If Wadlington can have no protection here, it is equivalent to declaring that any creditor in such case can, by selling the bond, deprive the surety of his security at his pleasure.

It is further submitted that although the mere delay of the creditor to collect the debt from the principal debtor will not, of itself, discharge the surety, yet the delay of more than seventeen years, in this case, combined with complications produced by that lapse of time, such as the death of nearly all the parties connected with the execution of the bond and mortgage, and with the release of the mortgage, and the sale of the land by the mortgagor and principal debtor, may well be held to make that "case of outrageous neglect on the part of the creditor, in omitting to recover his money from the principal debtor, in which the surety would be exonerated," referred to by Chancellor Dargan in *Lang* vs. *Brevard*, 3 Strob. Eq., 65.

*Melton & Clarke*, contra.

Sept. 15, 1874. The opinion of the Court was delivered by

MOSES, C. J. That a surety is entitled to the full benefit of every

security which the creditor holds, or may make available, against the principal debtor, is a proposition admitting of no dispute. As the creditor may subject the security to the payment of his debt, and thus obtain its satisfaction, the surety may compel him to do so, although he may not have known of its existence when he became bound, or even although it may have been given after the contract of suretyship had been entered into. The principle is not contested, and there is, therefore, no necessity to sustain it, either by argument or authority.

The foundation on which it rests involves another conclusion, following as a legitimate result, and, in its consequences, giving rise to questions not of so easy a solution as those which depend on the mere application of the principle itself. These affect the rights of the surety, so far as they depend on the action of the creditor. If he commits any positive act prejudicial to the security he holds, or omits or neglects any act, on the demand of the surety, which the relation in which he stands imposes as a duty, the loss must fall upon him who has contributed to it, and not on the surety who has been free from all participation. If, therefore, there is a loss of the security by the fault of the creditor, the surety will be discharged.

Muller, the respondent, under the Act of 1798, (5 Stat., 130,) held the legal title to the bond which had been assigned to him before January, 1855. The other six bonds, as they are not accounted for, must be supposed either to have been paid to Fair by Bauskett, the principal, or remained in his hands, when, on April 14th, 1863, he released and discharged the lien of the mortgage.

The assignment of a debt carries with it all the collateral securities held for its payment, and equity will enforce them for the benefit of the assignee. The mortgage constitutes a charge on the property mortgaged for the security of the debt, and whoever holds the latter may claim the enforcement of the lien, which is only an incident of or accessory to it.—Story's Eq , § 1047; *Martin et al.* vs. *Mowlin,* 2 Burrows, 969; *Wright* vs. *Evans,* 10 Rich. Eq., 585.

The assignment of the one bond to Muller did not, however, transfer to him the legal title of the mortgage; this remained with Fair, while the respondent had an equitable interest in it to the extent of the debt due him, and could compel the application of its proceeds to the satisfaction of his obligation, in the proportion which it bore to the other bonds, for the security of all of which the mortgage was executed.—*Johnson* vs. *Hart,* 3 John. Cases, 322;

*Pattison* vs. *Hall*, 9 Cowen, 747. Nor had Muller, as assignee of the one bond, any right to the custody of the mortgage as against Fair, the mortgagee, who had the legal title to the other six bonds.

To exonerate the appellant from his liability on the bond, because of the alleged loss of the security through the mortgage, it should appear that it resulted from the fault of the creditor. There has been no attempt in any way to connect the respondent, who had the whole legal interest in the bond, with the act of the assumed discharge by Fair. The appellant had as much control over the mortgage as the respondent. Fair stood in a fiduciary relation to both of them—the mortgage enured to their mutual benefit—and if, on the one hand, it is said by the surety to the creditor: you should have assumed control or dominion over the mortgage, he might well reply: you knew of its existence, and as I have done nothing to destroy its validity, why did you not require the mortgagee who held it to enforce it for your benefit?

The argument for the appellant proceeds upon the ground that the release executed by Fair operated not only as a discharge of the lien of the mortgage, so far as it was a security for the six bonds retained by him, but that it also included and affected the bond assigned to Muller, and as to which Fair had parted with all title. While Fair had the right to the possession of the mortgage he had no power over the bond assigned to Muller, and to secure which the mortgage was in part executed. He was the proper custodian of the instrument, but without authority to release it, save as to the interest which he held in it, through the six bonds which he retained. The purchaser of the land had notice, by the mortgage itself, that it had been given to secure seven bonds. Common prudence, it seems, would have dictated the natural enquiry as to their payment, which would have led to the knowledge of the fact that one of them, at least, had been transferred by the mortgagor. In fact, the endorsement on the mortgage did neither express or imply payment of the bonds it was intended to secure, but purported to be a "release and discharge of the lien and legal effect" of the mortgage, and those who accepted it as such may be able to sustain it for their protection, if there was no obligation on them to enquire as to the right of Fair to deal with the mortgage, in regard to all the bonds, as if he were the owner of them. Nothing can be inferred from the silence of the respondent as to the proposed discharge of the lien, at the time it was executed,

for there is no evidence of any notice, on his part, that the act was intended or designed.

In referring to the general principles by which our judgment is to be governed in the case, as presented to us, we do not propose that they shall have any weight beyond the purpose for which they are intended. Of course nothing that we can say here will preclude the purchasers of the land, should the occasion arise, from making any defense as to which they may be advised. We deal only with the case before us, and our judgment here can not prejudice their rights, whatever they may be.

The motion is dismissed.

*Wright*, A. J., and *Willard*, A. J., concurred.